Elizabeth McGhee **JOHNSON** et al.

v.

**UNITED STATES of America.**

Civ. A. No. 4-371.

United States District Court
N. D. Texas,
Fort Worth Division.

Feb. 26, 1966.

Luther Hudson, Hudson, Keltner, Smith & Cunningham, Fort Worth, Tex., for defendant.

Melvin M. Diggs, U. S. Atty., Fort Worth, Tex., by William O. Callaway, Asst. U. S. Atty., for defendant.

BREWSTER, District Judge.

This is a suit brought by the Independent Executors of the Estate of F. Kirk Johnson, deceased, and by his widow, Elizabeth McGhee Johnson, seeking to recover gift taxes, together with interest, claimed by them to have been erroneously assessed and collected. The amount of principal involved is $9,982.51 each as to Mrs. Johnson and as to her husband's estate, making a total of $19,-965.02 gift taxes paid for the years 1959, 1960, 1961 and 1962.

During the years involved, Mr. and Mrs. Johnson made large interest free loans to their children, repayable on demand. It is stipulated that the loans were bona fide and that most of them had been repaid prior to Mr. Johnson's death. The District Director of Internal Revenue at Dallas claimed that in each of the years in question Mr. and Mrs. Johnson made a gift to their children of the value of the use of the money at 3½ per cent per annum on the average unpaid balance for each year.

The facts are stipulated. The only question is one of law, and that is stated by the parties in the pre-trial order to be:

"(8) The contested issue of law is whether the taxpayers made gifts within the meaning of Section 2501, Internal Revenue Code of 1954, to their children of the value (claimed by the defendant to be 3½ per cent of the average unpaid annual balance) of the use of money loaned by the taxpayers to the children, repayable on demand without interest."

*Findings of Fact*

The facts are found as stipulated; and, for the convenience of any reviewing court, if this case is appealed, such stipulations are here copied. They read:

"NOW COME the parties, plaintiffs and defendant, through their duly authorized attorneys, and make the following factual stipulation, for the purposes of this case only, which shall constitute the entire evidence in this cause.

### 1.

"Elizabeth McGhee Johnson and F. Kirk Johnson (Sr.), both of whom were at all times pertinent hereto citizens of the United States and residents of Fort Worth, Tarrant County, Texas, and who are hereafter jointly referred to as 'taxpayers', had two children and only two children, F. Kirk Johnson, Jr. and Elizabeth Ann Johnson Mitsch, both of whom were adults, married and maintaining their own homes in Fort Worth in 1955 and at all times thereafter.

### 2.

"The taxpayers had for more than five years prior to the year 1956 and to and through the year 1962 consistently made bona fide loans to each of their children in varying amounts for various purposes. In addition, all loans were made with the agreement and understanding that the borrower would be obligated to repay same, on demand, without interest. Virtually all of such loans at the time of their original making were in the form of advances and kept on the taxpayers' records as accounts receivable, although there may have been minor accounts which were evidenced originally by notes payable on demand without interest.

### 3.

"On January 1, 1959, F. Kirk Johnson, Jr., executed a note payable on demand, without interest, in the amount of $278,-836.10, which was the balance then outstanding on all of his noninterest-bearing debts. On January 1, 1959, Elizabeth Ann Johnson Mitsch executed a note payable on demand, without interest, in the amount of $215,282.27, which was the balance then outstanding on all of her noninterest-bearing debts. Each of the children from time to time made payments upon a particular loan or discharged and repaid same in full.

### 4.

"Subsequently during 1962 there were additional advances to each of the children, all of the amounts advanced to Elizabeth Ann Johnson Mitsch being repaid before the end of the year, but there being $30,000.00 advanced to F. Kirk Johnson, Jr., which was not repaid by him and which was outstanding at the time of his father's death and was included in the Estate of F. Kirk Johnson for estate tax purposes and valued therein at its face value.

### 5.

"For part of the time involved, as more particularly hereafter set out, taxpayers made noninterest-bearing loans to William G. Mitsch, Jr., the husband of Elizabeth Ann Johnson Mitsch, which loans were also bona fide loans, payable on demand, without interest, by agreement between the taxpayers and William G. Mitsch, Jr. Taxpayers, on their books and records, reflected all of such advances as bona fide loans, and borrowers in each instance on their records reflected such borrowings as being loans and not gifts. Taxpayers' books and records reflected some gifts in each of the years involved, but in no instances were the loans involved in this action reflected as gifts on either the books of the taxpayers or on the books of the children. All of the loans involved in this case were bona fide, and in each instance there was an agreement by the debtor to repay the principal amount, without interest, on demand.

### 6.

"In accordance with the foregoing facts, the balance outstanding of the sums loaned to F. Kirk Johnson, Jr. as of December 31, 1955, was $154,866.18, and the said F. Kirk Johnson, Jr. was obligated to pay such amount to taxpayers on demand, without interest. In accordance with the foregoing facts, the balance outstanding of the sums loaned to Elizabeth Ann Johnson Mitsch as of December 31, 1955, was $101,740.88. Tabulated below is the balance outstanding at the beginning of each year involved, the amount repaid during that year, the amount of additional loans during such

year, and the average of the amount of the loans during such year, for F. Kirk Johnson, Jr. and Elizabeth Ann Johnson Mitsch, and for William G. Mitsch, Jr., to whom no loans were made prior to 1959, all of the figures being within the facts as stipulated in Paragraph 1 through 5.

| | F. Kirk Johnson, Jr. | Elizabeth Ann Johnson Mitsch | William G. Mitsch, Jr. |
|---|---|---|---|
| **1956** | | | |
| Balance 12/31/55 | $154,866.18 | $101,740.88 | –0– |
| Amount repaid during 1956 | 586.48 | 811.52 | –0– |
| Additional loans during 1956 | 50,973.98 | 72,688.43 | –0– |
| Total loans outstanding 12/31/56 | 205,253.68 | 173,617.79 | –0– |
| Average loans during 1956 | 180,059.93 | 137,679.33 | –0– |
| **1957** | | | |
| Balance 12/31/56 | $205,253.68 | $173,617.79 | –0– |
| Amount repaid during 1957 | 1,176.94 | 1,176.94 | –0– |
| Additional loans during 1957 | 74,366.76 | 42,069.14 | –0– |
| Total loans outstanding 12/31/57 | 278,443.50 | 214,509.99 | –0– |
| Average loans during 1957 | 241,848.59 | 194,063.89 | –0– |
| **1958** | | | |
| Balance 12/31/57 | $278,443.50 | $214,509.99 | –0– |
| Amount repaid during 1958 | 57,747.63 | 51,073.63 | –0– |
| Additional loans during 1958 | 57,070.10 | 50,775.78 | –0– |
| Total loans outstanding 12/31/58 | 277,765.97 | 214,212.14 | –0– |
| Average loans during 1958 | 278,104.74 | 214,361.06 | –0– |
| **1959** | | | |
| Balance 12/31/58 | $277,765.97 | $214,212.14 | –0– |
| Amount repaid during 1959 | 38,077.90 | 23,492.22 | $15,389.95 |
| Additional loans during 1959 | 55,933.05 | 53,672.60 | 15,662.44 |
| Total loans outstanding 12/31/59 | 295,621.12 | 244,392.52 | 272.49 |
| Average loans during 1959 | 287,984.65 | 229,605.83 | 2,403.67 |
| **1960** | | | |
| Balance 12/31/59 | $295,621.12 | $244,392.52 | $ 272.49 |
| Amount repaid during 1960 | 35,591.76 | 36,724.09 | 681.21 |
| Additional loans during 1960 | 39,643.32 | 29,791.47 | 1,070.84 |
| Total loans outstanding 12/31/60 | 299,672.68 | 237,459.90 | 662.12 |
| Average loans during 1960 | 295,450.43 | 238,555.49 | 211.11 |
| **1961** | | | |
| Balance 12/31/60 | $299,672.68 | $237,459.90 | $ 662.12 |
| Amount repaid during 1961 | 119,261.32 | 115,398.74 | 3.85 |
| Additional loans during 1961 | 118,579.23 | 113,126.05 | 379.96 |
| Total loans outstanding 12/31/61 | 298,990.59 | 235,187.21 | 1,038.23 |
| Average loans during 1961 | 301,668.35 | 237,756.93 | 862.94 |

|  | F. Kirk Johnson, Jr. | Elizabeth Ann Johnson Mitsch | William G. Mitsch, Jr. |
|---|---|---|---|
| **1962** | | | |
| **January–May, Inclusive** | | | |
| Balance 12/31/61 | $298,990.59 | $235,187.21 | $ 1,038.23 |
| Amount repaid during first five months of 1962 | 6,171.69 | 6,091.52 | –0– |
| Additional loans during first five months of 1962 | 12,182.55 | 6,696.40 | 217.53 |
| Total loans outstanding 5/31/62 | 305,001.45 | 235,792.09 | 1,255.76 |
| Average loans during first five months of 1962 | 301,996.02 | 235,489.65 | 1,147.00 |
| **June–December, Inclusive** | | | |
| Balance 5/31/62 | $305,001.45 | $235,792.09 | $ 1,255.76 |
| Amound repaid during last seven months of 1962 | 334,970.07 | 240,608.33 | 1,424.87 |
| Additional loans during last seven months of 1962 | 59,968.62 | 4,816.24 | 311.38 |
| Total loans outstanding 12/31/62 | 30,000.00 | –0– | 142.27 |
| Average loans during last seven months of 1962 | 60,517.45 | 29,695.13 | 244.57 |

"In June of 1962, the entire debt of each child was paid in full, without interest prior to the death of F. Kirk Johnson, Sr., and prior to the rejection of the claims for refund, except for the $30,-000.00 borrowed by F. Kirk Johnson, Jr. during the last seven months of 1962, which was not repaid at the time of the death of F. Kirk Johnson and which was included in his estate for estate tax purposes. No demand was made by taxpayers of the debtors for repayment, and the repayments as reflected by the foregoing facts were voluntary rather than forced payments. The taxpayers never demanded or requested interest of the debtors, nor exacted or attempted to exact any sum whatsoever for the value of the use of the money; nor did debtors offer to pay interest or any sum as the value of the use of the money.

7.

"For each of the years 1956 to 1962, inclusive, the United States of America, through its District Director of Internal Revenue, Dallas, Texas, assessed a gift tax deficiency (or adjustment) against the taxpayers. The gift tax here involved was computed by asserting that in each of the years the taxpayers made a gift to the debtors of the value of the use of the money at 3½ per cent of the average unpaid balance for that year.

8.

"It is admitted that the Court has jurisdiction of the parties and the subject matter respecting the years 1959, 1960, 1961 and 1962, and that the allegations in Paragraphs 1 and 2 of the plaintiffs' complaint in this case are correct.

9.

"The parties further agree that the only issue in this case is whether or not taxpayers made gifts in each of the years in accordance with the computation thereof by the Internal Revenue Service as set out in Paragraph 7."

Conclusions of Law

1. This Court has jurisdiction of the subject matter and the parties. 28 U.S. C.A. § 1346(a) (1).

2. The taxpayers did not make gifts within the meaning of Section 2501, Internal Revenue Code of 1954, to their children of the value of the use of the money loaned by the taxpayers to the children, repayable on demand without interest.

The question here involved is one of first impression in the gift tax area, and there are no cases even nearly in point.

There is nothing about this transaction that defeats the purpose of the gift tax laws expressed in Harris v. Commissioner of Internal Revenue, 340 U.S. 106, 107, 71 S.Ct. 181, 95 L.Ed. 111 (1950), to prevent a person from evading estate taxes through reduction of his estate by *inter vivos* gifts. The parents were under no duty to lend or otherwise invest their money. They had a right to keep it in cash. These loans were conceded to be genuine. Most of them had been repaid before the father's death. The unpaid amount of the loans appeared on the books, and was includable as an asset of his estate in arriving at the amount of his estate taxes.

The right to interest must arise from an express or implied contractual obligation or from statute. There was no express or statutory duty on the part of the children to pay their parents interest. Neither was there an implied one, because it was conceded that under the circumstances of this case it was the intention of all the parties that no interest should be charged.

The time has not yet come when a parent must suddenly deal at arm's length with his children when they finish their education and start out in life. There is no legal requirement, express or implied, to charge them interest on money advanced to them at that stage, whether it be to open a law office and hang out a shingle, to go into the oil business on a substantial scale, or to begin life on their own in some other way. The fact that the Johnsons were financially able to make substantial loans to their children does not change the principle involved. It is to the credit of the entire family that children of those wealthy parents had the judgment to use their money in such a way that they were able to repay almost the entire loans during their father's lifetime.

Passage of a law providing for a tax like the one here contended for should be sought through Congress instead of the courts. There, the people would have a chance to be heard in committee meetings. It could well be that many substantial persons would there express the hope that there might still be some better sources for raising taxes. Laws passed by Congress would necessarily be prospective, rather than *ex post facto*, in application; and people affected would thereby have an opportunity to adjust their conduct according to such laws.

3. The plaintiffs are entitled to a refund of the gift taxes which they paid under protest pursuant to the gift tax deficiency assessment imposed upon them by the United States, and for interest on such sum for the time and at the rate provided by law.

4. Judgment will be entered for the plaintiffs in accordance with these findings of fact and conclusions of law.